IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JAMAL CHE GLENN,

      Plaintiff,

v.                              CASE NO. 5:12-cv-260-RS-GRJ

SHAWN GILLIS and
KENNETH JOHNSON,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment. (Doc. 18.)  Plaintiff has filed a response and, therefore, the motion is ripe for consideration. (Doc. 21.) For the reasons discussed below, Defendants' Motion for Summary Judgment (Doc. 18) is due to be **GRANTED**.

## I. BACKGROUND

Plaintiff, proceeding *pro se*, initiated this case on August 14, 2012 by filing a civil rights complaint naming Shawn Gillis, Assistant Warden of Graceville Correctional Facility, and Kenneth Johnson, Education Director of Graceville Correctional Facility, as Defendants. (Doc. 1.) Plaintiff was and still is a state prisoner incarcerated by the Florida Department of Corrections at the Graceville Correctional Facility in Graceville, Florida. (Doc. 1, p. 2.)  Plaintiff brings his claim under 42 U.S.C. § 1983 alleging that Defendants violated his rights under the First and Fourteenth Amendment by retaliating against him when Plaintiff was removed from an educational class after he filed a grievance complaining about the level of instruction in the program.  (Doc. 1, p. 5.)

The material facts supporting Plaintiff's claim as contained in the complaint and affidavits filed by the parties discloses the following events.  In April 2010, Plaintiff's request to be enrolled in the vocational course, PC Support Service, was granted. (Doc. 1, p. 6.) According to Plaintiff, the course was supposed to provide instruction in Microsoft Office applications, and it was taught by four separate instructors. *Id*. The Plaintiff alleges that In January 2012, the fourth instructor, Ms. Toloday, changed the curriculum to a typing course. Plaintiff was very unhappy with this change and expressed his dissatisfaction by filing multiple grievances and by verbally complaining to the instructor.

As to grievances, Plaintiff filed three informal grievances to the Education Department on February 1, 2012. (Doc. 18, Ex. C., pp. 1-3.)  In these grievances Plaintiff stated that: (1)  Ms. Toloday was "completely indifferent" to Plaintiff's question about the content of the course and gave him "the cold shoulder" (*Id*., p. 1); (2) "her typing quizzes are worse than worthless;" (3) Ms. Toloday is "lacking in the skills necessary to teach a PC Support Class" (*Id*., p. 2); and (4) he felt "disrespected" by Ms. Toloday (*Id*., p. 3). Plaintiff also filed two informal grievances to the Assistant Warden. In one of the grievances Plaintiff wrote that "it is common knowledge among both inmates and staff that Ms. Toloday has ruined the learning process." *(Id*., pp. 4-5.) On February 3, Plaintiff filed multiple grievances to the Warden objecting to the responses he received to his earlier informal grievances and stating that "Ms. Toloday's performance is not meeting my educational needs." *(Id*., pp. 6-12.)

In addition to filing these written grievances Plaintiff also verbally complained to Ms. Toloday  about the course material and instruction. Plaintiff told Ms. Toloday that "if

she didn't want to teach me about trouble shooting and other computer skills than [sic] I'd rather be out of the class." (Doc. 18, Ex. C, pp. 15-16.)

Defendant Johnson visited the PC Support class on December 6, and Plaintiff requested to speak with him in order to "lodge his own complaint" about the course. *(Id.*, pp. 5, 13.) Defendant Johnson directed Plaintiff into the hall and told him not to file three grievances at the same time again or two were going in the trash. (Doc. 1, p. 6; Doc. 18, pp. 3, 6-7.) On February 7, 2012, Plaintiff was removed from the course. (Doc. 1, p. 7; Doc. 18, Ex. C, p. 8.)

Plaintiff alleges that his removal from the course was retaliation for his written grievances against Ms. Toloday and the quality of a curriculum "created by one or both of the defendants." (Doc. 21, p. 3.)  According to Plaintiff, he repeatedly expressed a desire to remain in the course due to the number of course hours he had already completed. (Doc. 1, p. 7; Doc. 18, Ex. C, pp. 11, 13.)  Plaintiff contends that he was never disruptive in class and that he never stated that he could not learn from the instructor. (Doc. 21, p. 2.) As support for his assertion that he was on good behavior in class, he has submitted his inmate management plans for the prior three years (2010 to 2012), which show above satisfactory ratings (Doc. 21, Ex. B), and an affidavit from classmate Jerry Yarley, who avers that Plaintiff worked diligently in class (Doc. 21, Ex. C).

Defendants contend that Plaintiff's complaints were disruptive to the class and that these distractions and his own statements that he could not learn in the class and disliked the content were the reasons for his removal. (Doc. 18, Ex. A and B.)

## II. <u>STANDARD FOR SUMMARY JUDGMENT</u>

Because the Court must rely upon affidavits and other matters outside of the pleadings to resolve this motion the motion is governed by Rule 56 of the Federal Rules of Civil Procedure. Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-moving party." *Samples on Behalf of Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). "In determining whether summary judgment is appropriate, [the Court is] required to draw all reasonable inferences in favor of the non-moving party, not all *possible* inferences." *Horn v. United Parcel Services, Inc.,* 433 F. App'x 788, 796 (11th Cir. 2011) (emphasis added). As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

## II. <u>DISCUSSION</u>

In a general sense an inmate is considered to be exercising his First Amendment

right of freedom of speech when he complains about the conditions of his confinement to prison administrators. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). An inmate may maintain a cause of action against prison administrators who retaliate against him for making such complaints. *Id*. To prevail in such a retaliation claim an inmate must prove three elements:

> (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech.

*Id*.

In determining whether there is a causal connection under the third prong of a retaliation claim the focus is on the subjective motivation of the defendants *Coward v. Captain Gonzales*, No. 7:03-CV-139 (HL), 2009 WL 918637, at *4 (M.D. Ga. Mar. 31, 2009). The Court is required to use a three-part burden-shifting framework to evaluate the third prong. The plaintiff must first make a *prima facie* showing of retaliatory motive and adverse action. *Kornagay v. Burt*, No. 3:09-cv-281/LAC/EMT, 2011 WL 839496, at *9 (N.D. Fla. Feb. 8, 2011) (citations omitted). The burden then shifts to the defendant to demonstrate that the same action would have been taken even without the impetus to retaliate. *Id*. After such a demonstration, the plaintiff must produce affirmative evidence from which a jury could conclude that the plaintiff met his or her burden to prove the retaliatory motive. *Id*.

In evaluating the retaliation claim under the burden-shifting framework the Court must also consider the difficulty and complexity of running a penal institution. *See Osterback v. Kemp*, 300 F. Supp. 2d 1238, 1257 (2003). Because of the difficulties in

running a penal institution "prison officials must be accorded latitude in the administration of prison affairs," *Cruz v. Beto*, 405 U.S. 319, 321 (1972). This includes the "withdrawal or limitation of many privileges and rights" of inmates, *Pell v. Procunier*, 417 U.S. 817, 822 (1974). In the context of the First Amendment, this means

> that a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system.

*Id*. Appropriate deference, of course, must be given to prison officials' proffered legitimate penological reasons for the allegedly retaliatory conduct. *O'Bryant v. Finch*, No. 5:05cv111/LAC/MD, 2008 WL 691689, at *7 (N.D. Fla. Mar. 12, 2008). Regulatory actions taken by prison officials are presumed to be reasonable, and consequently the inmate must produce "specific, nonconclusory factual allegations" that establish the retaliatory motive in order to meet his burden. *Id*. (citations omitted).

Turning to Plaintiff's claim, the first two elements of a claim for retaliation – i.e. that his speech was constitutionally protected and that he suffered adverse action – do not seem to be seriously contested by Defendants.[1] The dispute between the parties instead is focused upon the third prong of Plaintiff's retaliation claim and whether there is a causal connection between the speech and the challenged action.

Under the burden shifting framework, Plaintiff has demonstrated the required *prima facie* showing of adverse action (his removal from the vocational course) and some causal relationship between this action and his protected speech. Defendants

---

[1] Defendants do not contest that the first two elements are satisfied and concentrate their argument on the lack of retaliatory motive and but-for causation. (Doc. 18, pp. 6, 9-11.)

have responded with a legitimate, non-retaliatory reason for their action. Defendants contend that removal of the Defendant from a course about which he complained was unsatisfactory and about which he stated he could not learn properly was an effective use by the prison of limited prison resources. After a careful review of the record the Court concludes that Plaintiff has not rebutted adequately this legitimate reason and has failed to establish that the defendants were "subjectively motivated to discipline" him for exercising his First Amendment rights. *Mosley*, 523 F.3d at 1278. Because Plaintiff has not established the necessary causal relationship between the retaliatory action and the protected speech, summary judgment is, therefore, due to be granted in Defendants' favor.

Defendants have presented a legitimate penological interest explaining Plaintiff's removal from the vocational course. It is undisputed – as evidenced in the grievances filed by Plaintiff – that he complained in writing and verbally about the quality of the instruction and curriculum of the course. (Doc. 18, Ex. C.) While Plaintiff never expressly requested removal from the class, his comment to Ms. Toloday that he would rather be out of the class if she was not going to teach certain computer skills (Doc. 18, p. 3), viewed in conjunction with his numerous other complaints, evidence that Defendants' actions in removing him from the class was reasonable. The prison has limited resources, and courses, such as the PC Support class involved in this case, are offered to inmates as a privilege and not as a matter of right.  (Doc. 18, p. 9.) Opening up a space in the class for a prisoner, who actually wanted to take the course, allowed the education department to better accommodate the larger prison population. *See Coward*, 2009 WL 918637, at *7-8 (removing inmate from a class he had already

completed to open his slot for another inmate defeats the causal connection element of retaliation claim). "The Constitution accords prison officials wide latitude to bestow or revoke ... perquisites [such as access to vocational and educational programs] as they see fit." *McKune v. Lile*, 536 U.S. 24, 39 (2002). Thus, the effective use of limited prison resources constitutes a legitimate penological reason for Plaintiff's removal from the course given his complaints that he did not want to learn the material in the course and his numerous complaints that the course was not meeting his educational needs. (Doc. 18, Ex. C.)

Because Defendants proffered a legitimate, non-retaliatory reason for their action, Plaintiff has the burden to rebut it with evidence from which a jury could find by a preponderance of the evidence that retaliation was the but for cause of the defendants' action. *Kornagay*, 2011 WL 839496, at *9. Plaintiff attempts to do so in three ways. First, Plaintiff argues that the temporal proximity between the allegedly retaliatory behavior and the filing of a grievance is sufficient proof of retaliatory intent. (Doc. 21, p. 6.) Second, Plaintiff points to the prison's response to a grievance that states he was removed from the course "solely" because of his repeated written statements. *(Id.*, pp. 4, 6.) Lastly, Plaintiff argues that he could not have been removed without a retaliatory motive because "his behavior and performance wer [sic] above satisfactory" the entire duration of the course. (*Id.*, p. 2.) These arguments fall short of creating a genuine issue of material fact regarding whether the Defendants' proffered reason for the adverse action is pretextual.

Turning first to the temporal proximity, the timing of the action standing alone is insufficient. To the contrary, the fact that his removal form the class is close in time to

the filing of grievance underscores the fact that the reason for his removal was in response to his complaints that the class was inadequate and that it was worthless. Where, as here, a defendant produces a legitimate non-retaliatory reason for his or her action, the presumption of retaliation created by temporal proximity "drops from the case" and "the factual inquiry proceeds to a new level of specificity." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citations omitted) (discussing the same burden-shifting framework in the employment discrimination context).

To rebut the prisons's proffered legitimate reason for his removal from the class, the Plaintiff must "allege that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). Plaintiff has neither rebutted nor discredited the explanation given by Defendants, especially when evaluating the evidence with proper deference to the decisions of the Defendants in their administration of the prison. *See Throop v. Sec'y of Corr.*, No. 08CV2109-MMA (CAB), 2010 WL 3418353, at *4 (S.D. Cal. Aug. 27, 2010) (granting motion to dismiss against all defendants except the two against whom plaintiff alleged facts to "sufficiently link" the two defendants and the adverse action beyond "suspicious timing").

Plaintiff's second argument ignores the responses he received to his grievances. The prison's written responses state that Plaintiff was removed based on his "continued complaints" and not, as Plaintiff suggests, only because he filed written grievances. (Doc. 18, Ex. C, pp. 8, 10, 12, 20, 22.) The record without dispute evidences that Plaintiff complained verbally on several occasions to Ms. Toloday and Defendant

Johnson. Plaintiff's verbal complaints expressed his strong dissatisfaction with the class, with Ms. Toloday and described the class as worthless. (*Id.* at pp. 5, 13, 15-16.) Thus, there were legitimate and compelling reasons to remove the Plaintiff from the class even in the absence of the filing of any written grievances so that the prison could make room for an inmate who actually desired to be in the course and who did not believe the course was failing to meet his educational goals. Therefore, because there is evidence that the defendants would have proceeded as they did even without the written grievances there is no inference that the grievances were the motivating factor, thus negating the causal connection between the removal and the exercise of Plaintiff's First Amendment rights. *Mosley*, 532 F.3d at 1278-79.

However, even assuming, *arguendo*, that the Defendants removed the Plaintiff from the class solely because of the information in the written grievances, Plaintiff's claim still falls short. Under Plaintiff's theory once a prisoner files a grievance, regardless of the content or subject matter of the grievance, any adverse action taken by a prison after that is unconstitutional. That is not the law. Indeed, the Court is required to carefully scrutinize the grievances to "ensure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them." *Scaff-Martinez v. Reese*, No. 1:10-cv-00549-CLS-HGD, 2012 WL 6754889, at *13 (N.D. Ala. Aug. 31, 2012) (quoting *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995)). A prison may appropriately respond to the content of an inmate's grievance without violating the inmate's constitutional rights. *See Moton v. Cowart*, 631 F.3d 1337, 1343 (11th Cir. 2011) (stating that the "contents of an inmate's grievance could violate a prison rule prohibiting disrespect toward prison officials" and thus

authorize disciplining the prisoner for this violation). "A prisoner does not automatically cast doubt upon an institutional decision, nor is the decision 'subject to exhaustive challenge,' solely because he was engaged in a First Amendment right." *Cranford v. Hammock*, No. 1:09-cv-00070-MP-AK, 2010 WL 916031, at *8 (N.D. Fla. Mar. 11, 2010) (quoting *Adams v. James*, 784 F.2d 1077, 1082 (11th Cir. 1986)).

This does not mean that prison officials can prohibit inmates from filing grievances nor does it mean on the other hand that every time "an inmate files a grievance the act of doing so renders the exercise of prison authority suspect." *Id*. Plaintiff's First Amendment rights are not violated by the prison acting upon the contents of his grievances. Prisoners cannot dictate the preferred curriculum or who will serve as instructors of the education department offerings. "[C]ourts should approach prisoner claims of retaliation with skepticism and particular care due to the near inevitability that prisoners will take exception with the decisions of prison officials and the ease with which claims of retaliation may be fabricated." *Id.* (internal quotation marks omitted). The bottom line is that Defendants responded to Plaintiff's complaints to address and remedy his dissatisfaction in the way they saw most fit. Simply responding to Plaintiff's expressed dissatisfaction with the class by removing him and giving the class place to another deserving inmate is not retaliation but rather a legitimate response to the contents of Plaintiff's grievances.

Plaintiff's suggestion that he had a satisfactory record in the class is also insufficient to rebut Defendant's assertion that he was removed for legitimate penological reasons. While Plaintiff's record of satisfactory behavior may refute Defendants' contention that Plaintiff was disruptive in class (Doc. 18, Ex. A and B), the

fact that Plaintiff received satisfactory reports does not, however, rebut the fact that removal of a prisoner who was dissatisfied with an educational program is a legitimate reaction to ensure appropriate use of limited educational department resources. Plaintiff admits to making verbal complaints to Ms. Toloday and Defendant Johnson, in addition to filing numerous grievances. (Doc. 18, Ex. C, pp. 5, 13, 15-16.) The uncontested facts show that he was dissatisfied with the course and did not want to learn the material, which supports Defendants' legitimate non-retaliatory reason for their action regardless of whether he also disturbed the class.

Plaintiff also fails to rebut Defendants' other arguments concerning their lack of a retaliatory motive and has failed to come forth with affirmative evidence showing a retaliatory motive. *Kornagay*, 2011 WL 839496, at *9. For example, the grievances were not directed at either Defendant, although Plaintiff alleges that one or both Defendants was or were involved in designing the curriculum. (Doc. 21, p. 3.) The lack of complaints about or grievances filed against a particular defendant undermines a claim of retaliatory motive, if nothing else is offered as proof of such a motive. *See Thomas v. Lawrence*, 421 F. App'x 926, 929 (11th Cir. 2011); *Coward*, 2009 WL 918637, at *6-7; *Lyle v. Garza*, C.A. No. C-06-165, 2006 WL 3499512, at *6 (S.D. Tex. Dec. 5, 2006).

Plaintiff alleges that Defendant Gillis removed Plaintiff based on a recommendation from Defendant Johnson. (Doc. 1, p. 8.) Assuming this to be true, this further undermines any potential retaliatory motive by Defendant Gillis because he did not make the decision to take the allegedly retaliatory action.

Lastly, the grievances were minor in nature. Plaintiff's "challeng[e] [to the

conditions of his confinement" only addressed the quality of a privilege he had been afforded. The grievances did not concern, for example, mistreatment by prison staff, insufficient medical care, or removal of personal property. To accept Plaintiff's claim would require the Court to make a string of inferences that the Defendants were so upset about his complaints about another employee and/or the curriculum that one or both of them approved, that they sought to punish or silence Plaintiff. This chain is attenuated and insufficient to establish a retaliatory motive by either Defendant without the presentation of affirmative evidence by Plaintiff to support his claim.

Defendants did not threaten Plaintiff or take any actions outside of a direct response to and accommodation of his complaints. Defendant Johnson's statement to Plaintiff that he would throw away two of the grievances if Plaintiff filed three on the same subject at the same time again is most reasonably seen not as a threat of retaliation but merely as a reference to a provision of the Florida Administrative Code and the procedure that limits an inmate to only file one grievance on a given subject. *See* Fla. Admin. Code Ann. r. 33-103.015. Indeed, if this were retaliatory action, presumably Defendant Johnson would have threatened to throw away all future grievances rather than only the duplicative ones, or to take some adverse action against Plaintiff unrelated to the vocational course.

In sum, viewing the evidence in the light most favorable to Plaintiff, Plaintiff has failed to controvert Defendants' evidence that Plaintiff's removal from the vocational course was for legitimate, non-retaliatory reasons. Plaintiff has failed to present evidence creating a triable issue of fact that Plaintiff's removal was caused by a retaliatory motive. Accordingly, the Defendants' Motion for Summary Judgment is due

to be granted.

## V. RECOMMENDATION

In light of the foregoing it is respectfully **RECOMMENDED** that Defendant's

Motion for Summary Judgment (Doc. 18) should be **GRANTED**.

**IN CHAMBERS** this 8th day of July 2013.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**